UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MOTO TECH, LLC, an Idaho limited liability company,<br><br>v.<br><br>KTM NORTH AMERICA, INC., an Ohio corporation, | Case No. 1:13-cv-00165-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Defendant KTM North America, Inc.'s Motion to Dismiss (Dkt. 18). Plaintiff Moto Tech, LLC is a motorcycle dealership. KTM North America, Inc. distributes KTM and Husaberg branded motorcycles and related products through a network of authorized dealerships in North America. In April 2013, MotoTech filed suit against KTM, alleging that KTM violated the Idaho Consumer Protection Act ("ICPA")

Memorandum Decision and Order - 1

by engaging in false, misleading, and deceptive acts and representations in connection with the sale of motorcycles and the negotiation of a motorcycle dealership agreement.

On July 11, 2013, KTM filed this motion to dismiss MotoTech's Amended Complaint. KTM argues MotoTech's sole count for alleged violations of the ICPA should be dismissed because (1) MotoTech lacks standing to sue under the ICPA because it fails to plead the existence of a contract with KTM; (2) KTM's refusal to grant MotoTech a dealership agreement is not an unfair business act or practice as a matter of law; and (3) judicially noticeable facts contradict MotoTech's claim that KTM acted unfairly.

For the reasons set forth below, the Court will dismiss MotoTech's ICPA claim without prejudice, permitting MotoTech to (1) amend the ICPA claim in an effort to resolve a logical quandary described below, and (2) allege an alternate theory of recovery.

## BACKGROUND

In January 2011, KTM's Northwest Area Sales Manager, Jason Dahner, traveled to the Mototech offices. *Am. Compl.* ¶ 7, Dkt. 14. During this visit, Mr. Dahner told MotoTech's representative, Loyal Gibbons, that KTM was searching for a KTM dealer in Nampa, Idaho. *Id.*

Mototech had sought a KTM dealership for years. *Id.* Excited about the opportunity to sell the KTM brand, Mototech requested an application. *Id.* Mr. Dahner told Mr. Gibbons to locate a larger facility to accommodate their KTM line. *Id.*

Memorandum Decision and Order - 2

MotoTech received and submitted a dealership application to KTM and signed a long-term lease – at $4000 per month – on a new facility to operate its KTM dealership. *Id.* ¶¶ 10-11. MotoTech says it also met the necessary preconditions imposed by KTM to become a KTM dealer. *Id.* ¶ 10. Presumably because MotoTech believed it would secure a KTM dealership, MotoTech declined an opportunity to sell another brand of motorcycles. *Id.* ¶ 12.

On May 31, 2011, MotoTech's efforts in securing a KTM dealership culminated with KTM soliciting an order from MotoTech, at prices available only to KTM dealers. Mototech believed, by placing this dealer's order, Mototech accepted KTM's offer to become one of its dealers and to have access to KTM's products at dealer's prices. *Id.* In accordance with this belief that it had secured a KTM dealership, MotoTech hired staff, bought tools, obtained insurance, bought computers and a phone system, and signed a contract for a point-of-sale system. *Id.* ¶ 15.

A month or so later, in July, KTM asked MotoTech to attend a KTM dealer show to view and test KTM products. In response to this request, MotoTech made reservations and attended the show in Indianapolis, Indiana. Mr. Gibbons arrived at the dealer's show apparently expecting to receive his dealer number, but KTM had not prepared his dealer's package. *Id.* An unknown KTM representative reassured Mr. Gibbons that a dealer number was forthcoming, and the failure to have his packet prepared was a mistake.

Memorandum Decision and Order - 3

Some months later, KTM advised MotoTech that it would not provide MotoTech a KTM dealership. KTM also refused to deliver KTM-branded motorcycles to MotoTech at dealer's prices. *Id.*

Prior to filing the complaint, Mr. Gibbons located Mr. Dahner who had since left KTM. *Id.* ¶ 18. Mr. Gibbons asked him what he remembered about its KTM application and MotoTech's status as a KTM dealer. *Id.* Mr. Dahner recalled that MotoTech was in fact approved as a KTM dealer when it placed its order, but that he was aware KTM refused to honor it and he was not sure why. *Id.*

MotoTech alleges KTM engaged in conduct that was misleading and deceptive by:

a. Telling MotoTech that that the facility was suitable for the KTM line, and that if MotoTech secured the site, it would be approved for a KTM dealership;

b. Telling MotoTech it predicted MotoTech would sell at least 50 units per year out of the facility;

c. By leading MotoTech to believe it would become a KTM dealer if it submitted an application, met all the necessary preconditions required by KTM to become a dealer, and then submitted an order;

d. By telling MotoTech that it was a KTM dealer once it placed its order;

e. By refusing to honor its agreement to sell motorcycles to MotoTech and grant a KTM dealership; and

f. By telling MotoTech at the dealer show that the failure to provide it with a dealer number was a mistake and that a KTM dealer number was forthcoming.

Memorandum Decision and Order - 4

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for

Memorandum Decision and Order - 5

relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court

may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866, n.1 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## ANALYSIS

### 1. MotoTech Must Allege the Existence of a Contractual Relationship with KTM to Have Standing Under the ICPA.

MotoTech asserts one claim against KTM – that it violated the ICPA. The ICPA was enacted to protect consumers from "deceptive acts and practices in the conduct of trade or commerce." I.C. § 48–601. A business that purchases goods or services and suffers an ascertainable loss as a result of an act declared unlawful by the ICPA may seek damages. I.C. §48-608(1). Acts declared unlawful under the ICPA include "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer." I.C. § 48-603(17).

Idaho law is clear: "In order to have standing under the ICPA, 'the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively.'" *Duspiva v. Fillmore*, 293 P.3d 651, 660 (Idaho 2013) (quoting *Taylor v. McNichols*, 243 P.3d 642, 662 (2010)). The ICPA does not apply "to a merely

Memorandum Decision and Order - 7

contemplated transaction, where there was no contract." *Haskin v. Glass*, 640 P.2d 1186 (1989). Rather, "a claim under the ICPA must be based upon a contract." *Id.*

MotoTech's arguments attempting to circumvent this clear language are unavailing. As the ultimate arbiter of Idaho law, the Idaho Supreme Court has the last word on construing statutory language. *J.R. Simplot Co. v. Idaho State Tax Comm'n*, 820 P.2d 1206, 1210 (Idaho. 1991). And the Idaho Supreme Court has unequivocally stated that a contractual relationship must exist between the aggrieved party and the alleged aggrieving party. Thus, MotoTech's ICPA claim must be based on a contract – and not merely a contemplated transaction with no contract – to survive KTM's motion to dismiss.

### 2. MotoTech's ICPA Claim Is Facially Implausible.

MotoTech alleges that "KTM violated the ICPA by soliciting an application from MotoTech to become one of its dealers; providing preconditions and then causing MotoTech to take action to become one of its dealers; telling and notifying MotoTech that they were one of its dealers; soliciting MotoTech to make dealer's orders but failing to fill them or provide KTM a dealer number; and leading KTM to believe and allowing MotoTech to operate with the belief that it was in fact a KTM dealer." *MotoTech's Resp.* at 7, Dkt. 25. MotoTech relies on this same conduct to support its argument that it had a binding dealership agreement with KTM: "KTM's solicitation to submit an order was an offer [as defined under IDAPA 04.02.01 020 36] to make MotoTech a KTM dealer and to provide MotoTech with the ability to purchase motorcycles at dealer's prices. MotoTech

Memorandum Decision and Order - 8

accepted this offer by submitting this order and by satisfying all of the necessary preconditions by KTM to become a dealer." *Id.* at 8.

Ironically, the same allegations that could save MotoTech's ICPA claim from dismissal, i.e., those allegations that support the existence of a contractual relationship, are the same allegations that warrant its dismissal.  On the one hand, MotoTech argues that it has standing under the ICPA because it entered into a binding dealer agreement with KTM. On the other hand, MotoTech argues that KTM engaged in false, misleading, and deceptive conduct by leading MotoTech to believe that it had a binding dealer agreement with KTM when, in fact, it did not.

Here lies the incongruity.  If MotoTech and KTM had a binding dealer agreement, KTM could not have plausibly engaged in false, misleading, and deceptive conduct by leading MotoTech to falsely believe they had a binding dealer agreement.  If, however, MotoTech and KTM had no binding dealer agreement, MotoTech would not have standing under the ICPA.  In short, either (1) there was a contract, but no fraud, and therefore no claim under the ICPA; or (2) there was fraud, but no contract, and therefore no claim under the ICPA. Whichever way the Court spins MotoTech's allegations, the ICPA claim fails.

The Court cannot see how MotoTech can plead its way out of this quandary. However, the Court will give MotoTech an opportunity to amend its complaint to state both the existence of a contract and an unlawful act under the ICPA – but one which does not conflict with the existence of a contractual relationship between KTM and MotoTech.

Memorandum Decision and Order - 9

In addition, MotoTech may have an opportunity to amend its complaint to plead an alternate theory of recovery.

## ORDER

IT IS ORDERED that:

1. Defendant KTM North America, Inc.'s Motion to Dismiss (Dkt. 18) is GRANTED.

2. If MotoTech opts to plead some other theory of recovery, MotoTech shall file its Second Amended Complaint *no later than December 20, 2013.*

3. If MotoTech files a Second Amended Complaint by the deadline above, the Court will reevaluate the discovery deadlines set forth in the Case Management Order. In the meantime, any discovery deadlines are suspended until MotoTech files its Second Amended Complaint.

4. Defendant's Motion to Take Judicial Notice (Dkt. 19) is MOOT.

DATED: December 9, 2013

B. Lynn Winmill
Chief Judge
United States District Court

Memorandum Decision and Order - 10